Brett Schreiber (SBN 239707)
bschreiber@singletonschreiber.com
Meagan Verschueren (SBN 313117)
mverschueren@singletonschreiber.com
Katie Llamas (SBN 303983)
kllamas@singletonschreiber.com
SINGLETON SCHREIBER, LLP
591 Camino de la Reina, Ste. 1025
San Diego, CA 92108
Tel. (619) 771-3473

Attorneys for Plaintiff JANE DOE

## UNITED STATES DISTRICT COURT,
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>G6 Hospitality, LLC; G6 Hospitality IP, LLC; G6 Hospitality Property, LLC; G6 Hospitality Purchasing, LLC; G6 Hospitality Franchising, LLC; Motel 6 Operating, LP; HJH Family, LLC; The Clare Harris Trust; and ROES 1-200, inclusive,<br><br>Defendants. | No.<br><br>**Unlimited Jurisdiction**<br><br>**COMPLAINT FOR DAMAGES AND INJURIES**<br><br>**JURY TRIAL DEMANDED**<br><br>**Damages in excess of $100,000** |

## **COMPLAINT**

COMES NOW the Plaintiff JANE DOE, by and through the undersigned counsel, and respectfully submit this Complaint for damages and makes the following averments.

### **INTRODUCTION**

1.      For years, sex trafficking ventures have brazenly operated both online, and in and out of hotels throughout the United States.

2.    Major hotel brands have made public claims that they are combatting human trafficking, while at the same time expanding their economy hotels where sex trafficking is most prevalent and profiting from crimes that are perpetrated on their properties. Despite corporate public statements, human trafficking continues to be most prevalent and lucrative in the hotel and hospitality industry.

3.    Criminals parade their misconduct openly on hotel and motel properties throughout the United States, and profit from providing harbor for the underlying assaults. The hotel and hospitality industry continues to create and expand the environment for traffickers to harbor victims and neglect taking reasonable steps to prevent such criminal misconduct, instead choosing to earn a profit at the expense of human life, human rights, and human dignity.

4.    Public appearances, press releases, pledges, and sponsorships do not excuse corporations and individuals that have financially benefited from sex trafficking. In fact, it reveals corporate knowledge of the use of their properties and technology as hubs for human trafficking. The hotel industry has provided the means, environment, and support for the human trafficking industry to become the second largest profitable criminal activity in the United States.[1]

5.    As the trafficking industry grows, so have Defendants and their profits through the expansion of their properties and rooms rented for this explicit and apparent purpose.

6.    Jane Doe files this civil lawsuit seeking compensation for the harm she suffered as

---

[1]    https://www.mbfpreventioneducation.org/human-trafficking-is-now-the-second-most-profitable-criminal-activity-in-the-united-states/

2

COMPLAINT FOR DAMAGES AND INJURIES

a result of being sex trafficked and sold for sex at hotels owned, operated, maintained, regulated, and controlled by Defendants and their agents and employees.

## PARTIES

7.    Jane Doe is a natural person who is currently a California resident. Jane Doe is a survivor of sex trafficking. From 2013 to 2018 she was harbored and forced to engage in commercial sex acts for the benefit of her traffickers and Defendants.

a.    Due to the sensitive, private, and potentially retaliatory nature of these allegations, this complaint identifies Jane Doe by a pseudonym only. Jane Doe will move the court to proceed under a pseudonym in all filings, all public court proceedings, and to limit the disclosure of information about Jane Doe's true identity in order to protect Jane Doe and her identity.

b.    Generally, pleadings must state the name of all parties.[2] However, there are exceptions when the issues involved may result in retaliation or harm to the Plaintiff.[3] For good cause, the Court may issue an order to protect a party or person from undue harms and burdens.

c.    In order to maintain her privacy and safety, Jane Doe should not be compelled to disclose her identity. Jane Doe's privacy interest substantially outweighs the customary practice of judicial openness.[4] Jane Doe would be in danger of being forced back into trafficking should her

---

[2] Fed. R. Civ. P. 10(a).

[3] See cases e.g., Doe v. Penzato, 2011 U.S. Dist. LEXIS 51681, *6-9 (N.D. Cal. May 13, 2011); Roe v. St. Louis Univ., 2009 U.S. Dist. LEXIS 27716, *13, (E.D. Mo. Apr. 2, 2009).

[4] See cases *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992) (internal citation and quotations omitted).

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

trafficker or his associates learn information about her through publicly filed documents in this action. Additionally, Jane Doe's life could be put in grave danger should her trafficker or his associates learn information about her through publicly filed documents in this action. Moreover, Defendants will not be prejudiced. Jane Doe will agree to reveal her identity to Defendants for the limited purpose of investigating Jane Doe's claims once the parties have entered into a protective order.

8.    Defendant HJH Family, LLC is a for-profit Washington corporation with its principal place of business in Seattle, Washington. HJH Family, LLC owned and operated the Motel 6 South hotel located at 2760 Cleveland Avenue, Santa Rosa, California 95043 during part of the time Plaintiff was trafficked.

9.    Defendant The Clare Harris Trust is a for profit Washington corporation with its principal place of business in Everett, Washington. The Clare Harris Trust owned and operated the Motel 6 South hotel located at 2760 Cleveland Avenue, Santa Rosa, California 95043 during part of the time Plaintiff was trafficked.

10.    Defendant G6 Hospitality, LLC is a for-profit Delaware corporation with its principal place of business in Carrollton, Texas.

11.    Defendant G6 Hospitality, IP, LLC is a for profit Delaware corporation with its principal place of business in Carrollton, Texas.

12.    Defendant G6 Hospitality Property, LLC is a for-profit Delaware corporation with its principal place of business in Carrollton, Texas. Defendant G6 Hospitality Property, LLC owned and operated the Motel 6 South hotel located at 2760 Cleveland Avenue, Santa

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

Rosa, California, 95043 during the time Plaintiff was trafficked. Defendant G6 Hospitality Property, LLC owned and operated the Motel 6 North hotel located at 3145 Cleveland Avenue, Santa Rosa, California, 95403 during the time Plaintiff was trafficked.

13.    Defendant G6 Hospitality Purchasing, LLC, is a for-profit Delaware corporation with its principal place of business in Carrollton, Texas.

14.    Defendant G6 Hospitality Franchising, LLC is a for-profit Delaware corporation with its principal place of business in Carrollton, Texas.

15.    Defendant Motel 6 Operating, LP, is a for-profit Delaware corporation with its principal place of business in Carrollton, Texas. Defendant Motel 6 Operating, LP owned and operated the Motel 6 South hotel located at 2760 Cleveland Avenue, Santa Rosa, California, 95043 during the time Plaintiff was trafficked.

16.    Defendants, G6 Hospitality, LLC, G6 Hospitality IP, LLC, G6 Hospitality Property, L.L.C., G6 Hospitality Purchasing, L.L.C., G6 Hospitality Franchising, L.L.C. and Motel 6 Operating, LP will collectively be referred to as "Parent Hotel Defendants."

17.    Defendants HJH Family, LLC; The Clare Harris Trust; Motel 6 Operating LP, and G6 Hospitality Property, LLC will collectively be referred to as "Hotel Defendants."

18.    Parent Hotel Defendants are registered to do business in the State of California and may be served at Cogency Global Inc., 1780 Barnes Blvd. SW, Tumwater, Washington 98512.

19.    Upon information and belief Parent Hotel Defendants and its brand Motel 6 properties include the locations at 2760 Cleveland Avenue, Santa Rosa, California; and 3145 Cleveland Avenue, Santa Rosa, California, and purposefully availed itself to Sonoma,

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

California, and the citizens of Sonoma, California, through Motel 6.

## JURISDICTION AND VENUE

20.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the Trafficking Victims Protection Reauthorization Act ("TVPRA").

21.     Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claims asserted in this action, including the Defendants' misconduct and omissions, led to injuries that occurred in the judicial district where this action is brought.

22.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because, pursuant to 28 U.S.C. §§ 1391(c)(2) and 1391(d), at least one Defendant is a resident of Sonoma County, California, and all Defendants are registered to do business in California.

## SEX TRAFFICKING UNDER FEDERAL LAW

23.     Sex trafficking is the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of causing the person to engage in a commercial sex act either (1) before the person turns 18 years old; or (2) through force, fraud, or coercion.[5]

24.     The requirements for liability under the TVPRA on a beneficiary theory can be stated as follows: (1) the person or entity "knowingly benefits, financially or by receiving anything of value" (2) "from participating in a venture" (3) that the "person knew or should

---

[5] 18 U.S.C. §1591; 22 U.S.C. § 7102.

have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a).

25.     "Sex trafficking" is defined by the TVPRA under 22 U.S.C. § 7102(12) as "the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purpose of a commercial sex act."

26.     The term "severe forms of trafficking in persons" includes "sex trafficking in which a commercial sex act is induced by force, fraud, or coercion, or in which the person induced to perform such act has not attained 18 years of age." 22 U.S.C. § 7102(11).

## FACTUAL ALLEGATIONS

### Sex Trafficking of Plaintiff

27.     Starting in 2013, Plaintiff was subjected to sex trafficking at the Motel 6 North at 3145 Cleveland Avenue, Santa Rosa, California and Motel 6 South at 2760 Cleveland Avenue, Santa Rosa, California.

28.     For approximately five years, Plaintiff's trafficker rotated between these hotels. These hotels were used by Plaintiff's trafficker for days at a time, encountering the same staff again and again for years.

29.     Plaintiff's trafficker would use the same named locations so often that she started to quickly recognize staff. The front desk and other staff would consistently see Plaintiff with her trafficker and would have realized they kept returning and exhibiting red flags of trafficking.

30.     Oftentimes, Plaintiff did not have access to a phone.

31.     During this time Plaintiff was under the control of her trafficker and endured multiple beatings, threats and manipulation. Additionally, Plaintiff was strangled or

suffocated at these locations.

32.    Plaintiff's trafficker would grab her around the neck, shove her and grab her body. These violent encounters would take place at the subject hotel locations and were frequent.

33.    Plaintiff would have visible markings on her body from being thrown around the hotel rooms by her trafficker during altercations.

34.    Plaintiff was visibly terrified and feared for her life.

35.    During loud arguments, Plaintiff's trafficker threatened to kill her.

36.    Plaintiff's trafficker would take her car and leave her stranded at the subject hotel locations for hours at a time with no way to escape.

37.    Plaintiff was constantly watched and controlled by either her trafficker or his associates.

38.    Plaintiff's trafficker forced her to use drugs until Plaintiff became addicted and used this to control her. Before meeting her trafficker, she did not have a drug addiction. Plaintiff's trafficker used this as a threatening, isolating, and controlling mechanism to force her into trafficking.

39.    Many associates of Plaintiff's trafficker sold drug at the subject hotels. This was usually done in the parking lots.

40.    Plaintiff's trafficker would carry a knife which terrified her and kept her under his control.

41.    During check-in Plaintiff was visibly scared, would not make eye contact, was withdrawn, and timid during interactions with hotel staff.

42.    At all the hotel locations named herein, Plaintiff's trafficker would not allow the

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

cleaning staff to come in to clean the room or change out linens or towels. Instead, the trafficker or Plaintiff would ask for an extraordinary amount of linens and towels throughout their stays.

43.    Plaintiff is unsure how her trafficker would book her "dates" but on average she would be forced to take 3-5 dates a day but oftentimes it was 7-10 dates throughout the day and night. These dates would come to the subject hotel locations.

44.    Plaintiff was not allowed to keep any of the money she received from the dates she was forced to take. If Plaintiff's trafficker did not collect the money directly from her sex buyer, she would have to give it to him right after the sex buyer left the subject hotel rooms.

45.    Plaintiff's trafficker would oftentimes collect the money from the sex buyers outside in the parking lot in plain sight of hotel staff.

46.    Plaintiff's trafficker was extremely isolating and controlling of Plaintiff. He was also really paranoid, and all of this would have been visible to hotel staff and management.

47.    Plaintiff's trafficker would traffic multiple girls out of the subject motels at the same time that Plaintiff was being trafficked.

48.    Each of the subject Motel 6 locations named herein accepted cash as payment for motel rooms where Plaintiff was being held and trafficked.

49.    Each of the subject Motel 6 locations also accepted prepaid cash cards instead of credit cards.

50.    Plaintiff would not be allowed to sleep for days, forced to stay awake and be raped by strange men to make her trafficker money. She looked tired and malnourished.

51.    Plaintiff and her trafficker were kicked out of other nearby hotels and put on their

no rent list for the trafficking red flags listed throughout this complaint. Other hotel locations recognized the red flags and refused to be a part of the trafficking.

52.    With each stay at the subject Hotel Defendants' locations, it resulted in several consistent red flags, including but not limited to: paying for stays in cash; paying for extended stays on a day-to-day basis; requesting certain rooms away from other guests; obvious signs of illegal drug use; frequent requests for clean linens or towels; unusually large numbers of used condoms in the trash; unusually large numbers of male visitors going in and out of Plaintiff's room at all times during the day and night; other girls with Plaintiff's trafficker who were also being trafficked; visible signs of physical abuse; women wearing clothing inappropriate for the weather; and loud noises of abuse and other violence audible to staff and/or other rooms.

53.    These red flags were open and obvious to anyone working at the subject hotel locations and lasted for five years.

## The Hotel Industry's Role in Sex Trafficking

54.    In 2017, human trafficking was noted as the world's fastest growing crime.[6] While the term "human trafficking" incorporates all forced labor, the sex trafficking industry alone pulls in an estimated $99 billion each year making it the second largest illicit crime industry behind only the sale of all illegal drugs.[7]

---

[6] Human Trafficking is the World's Fastest Growing Crime. May 22, 2017. The Advisory Board. Available at:
        https://www.advisory.com/daily-briefing/2017/05/22/human-trafficking
[7] Profits and Poverty: The Economics of Forced Labor. May 24, 2014. International Labor Organization. Available
        at:    http://www.ilo.org/global/publications/ilo-bookstore/order-online/books/WCMS_243391/lang--en/index htm.

55.    The hospitality industry plays a crucial role in the sex trade.[8] Hotels have long profited from their reputations as havens of privacy and discretion for the offending. Despite the known risks and known trafficking crimes, hotels, including the Defendants, offer anonymity and non-traceability to the traffickers, making them ideal venues for crime and sex trafficking in particular.  Hotels, including the Defendants, knowingly harbor traffickers, buyers, and victims.

56.    Today, sex slavery is pervasive in the United States, and hotels are the primary place where it happens.[9] For years, sex traffickers have "been able to reap their profits with little risk when attempting to operate within hotels."[10]

57.    According to National Human Trafficking Hotline statistics, hotels are the top-reported venue, even over commercial front brothels, where sex trafficking acts occur. Traffickers and buyers alike frequently use hotel rooms to exploit victims.

58.    In 2014, 92% of calls received by the National Human Trafficking Hotline involved reports of sex trafficking taking place at hotels.  Hotels have been found to account for over 90% of commercial exploitation of children.

---

[8] Cavagnaro, Giovanna L. C. 2017. Sex Trafficking: The Hospitality Industry's Role and Responsibility. Cornell University School of Hotel Administration. Available at: http:/scholarship.sha.cornell.edu/honorstheses/3.

[9] This is not only a dominant issue, it's an epidemic issue." See Jaclyn Galucci, Human Trafficking is an Epidemic in the U.S. It's Also Big Business, Fortune (April 2019), https://fortune.com/2019/04/14/human-sex-trafficking-us- slavery/ (citing Cindy McCain, who chairs the McCain Institute's Human Trafficking Advisory Council). "It's also something that is hiding in plain sight. It's everywhere—it's absolutely everywhere." Id.

[10] See Human Trafficking in the Hotel Industry, Polaris Project (Feb. 10, 2016), https://polarisproject.org/blog/2016/02/10/human-trafficking-hotel-industry; see also Eleanor Goldberg, You Could Help Save A Trafficking Victim's Life With Your Hotel Room Pic, Huffington Post (June 2016), http://www.huffingtonpost.com/entry/taking-a-photo-of-your-hotel-room-could-help-save-a-trafficking-victimslife_us_57714091e4b0f168323a1ed7.

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

59.    Due to the overall hospitality industry's complacency, complicity, and reckless disregard in addressing the known issue of sex trafficking, hotels are the venue of choice for sex trafficking.  Traffickers and buyers capitalize on the hotel industry's general refusal to (1) adopt and enforce companywide anti-trafficking policies from the corporate to the property level, (2) train staff on what to look for and how to respond, and/or (3) establish safe and secure reporting mechanisms for those at the point of sale.

60.    Every day, thousands of hotel employees witness manifestations of sex trafficking and commercial exploitation. Thus, the hospitality industry has the greatest reach to prevent, identify, and thwart sexual exploitation where it is most likely to occur.

61.    Hotels and motels have the highest obligation to protect their guests from known dangers, including sex trafficking and sexual exploitation, and should be held accountable when they fail to comply. As stated in a publication by the Cornell University School of Hospitality, "the hospitality industry is undoubtedly involved in the sex trafficking industry…and therefore has an inherent responsibility to deter the crime and can be liable for failing to do so."

62.    Even estimates by attorneys for the hospitality industry indicate that eight (8) out of ten (10) arrests for human trafficking occur in or around hotels.[11] The 2016 Trafficking in Persons Report issued by the United States Department of State also confirmed that human trafficking occurs in the hospitality industry in the United States.

63.    The complicity of the hospitality industry perpetuates human trafficking, allowing

---

[11] U.S. Dep't of State. 2016. 2016 Trafficking in Persons Report, at 387. Available at: https://www.state.gov/documents/organization/258876.pdf.

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

traffickers to remain transient, collect profits, and evade detection. Sex trafficking ventures move from place to place so that they are less visible to law enforcement. Similarly, sex traffickers also want to keep their victims moving from place to place to isolate them from any possible means of escape or rescue. Traffickers are well aware of the seclusion and anonymity attendant with booking rooms with certain hotel chains; they know it is unlikely that they will be disturbed. Motel 6 is perhaps the most notorious example.

64.     Because of this link between hotels and sex trafficking, government agencies and non-profits have devoted significant efforts to educating the hotel industry, including Defendants, on best practices for identifying and responding to sex trafficking.

65.     Multiple agencies and organizations who actively combat sex trafficking, including the United States Department of Homeland Security, the National Center for Missing and Exploited Children, the Polaris Project, the Washington Attorney General, Love 146, and EPCAT, among numerous others, have established recommended policies and procedures for recognizing the signs of sex trafficking.[12]

66.     Some of the recommended policies and procedures intended to reduce or eliminate sex trafficking, which Defendants are aware or should be aware of and were aware or should have been aware of at all subject times of the trafficking alleged herein, are specific to the hotel industry. These include learning to identify warning signs and indicators of sex trafficking, including but not limited to:

---

[12] United States Department of Homeland Security Blue Campaign – One Voice. One Mission. End Human Trafficking, https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

a. Individuals show signs of fear, anxiety, tension, submission, and/or nervousness;

b. Individuals show signs of physical abuse, restraint, and/or confinement;

c. Individuals exhibit evidence of verbal threats, emotional abuse, and/or being treated in a demeaning way;

d. Individuals show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

e. Individuals lack freedom of movement or are constantly monitored;

f. Individuals avoid eye contact and interaction with others;

g. Individuals have no control over or possession of money or ID;

h. Individuals dress inappropriately for their age or have lower quality clothing compared to others in their party;

i. Individuals have few or no personal items—such as no luggage or other bags;

j. Individuals appear to be with a significantly older "boyfriend" or in the company of older males;

k. A group of girls appears to be traveling with an older female or male;

l. A group of males or females with identical tattoos in similar locations. This may indicate "branding" by a trafficker;

m. Drug abuse or frequent use of "party drugs" such as GHB, Rohypnol, Ketamine, MDMA (Ecstasy), Methamphetamines, Cocaine, and Marijuana;

---

14

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

n.  Possession and presence of bulk sexual paraphernalia such as condoms or lubricant; and

o.  Possession or use of large amounts of cash or pre-paid cards.

67.    At all times of trafficking alleged herein, Defendants understood the practical and legal association between commercial sex and sex trafficking in a hotel environment. Defendants knew or should have known that signs of commercial sex (prostitution) activity in their hotels were in fact signs of sex trafficking and should have seen signs of the sex trafficking of Plaintiff that was observable by Defendants.

68.    Defendants were aware or should have been aware of these signs of sex trafficking when operating, controlling, and managing their hotel properties, including the subject properties, when enacting and enforcing policies and procedures applicable to those hotels and when training, educating, and supervising the staff of that hotel.

69.    Given the prevalence of human trafficking in hotels and the abundance of information about how franchisors, owners, operators and hotel employees can identify and respond to this trafficking, it has become apparent that the decision of Defendants to continue generating revenue from traffickers without taking reasonable steps to identify and prevent trafficking in its hotels, is a conscious decision to financially benefit by supporting and facilitating unlawful sex trafficking.

**Parent Hotel Defendants' Control Over Their Hotel Defendant Locations**

70.    Parent Hotel Defendants are vicariously liable for the acts, omissions, and knowledge of their Hotel Defendants and management and staff of the Hotel Defendant locations named herein, which are Parent Hotel Defendants' actual agents or subagents.

71.    Upon information and belief, it is a standard practice in the hospitality industry, followed by all Defendants, for hotel parent companies to set exacting brand quality standards reaching everything from the temperature at which coffee shall be served, to the number of pillows that are placed on the beds, to the types of payments accepted, to when, where, and how guests are greeted.

72.    Parent Hotel Defendants provide their Hotel Defendants with signage on and in front of the building. This is done to assure customers that when they check in, they can expect an experience consistent with the standards of the Parent Hotel Brand. This brand logo is displayed on everything in the hotel, such as pens and paper on the bedside table and staff uniforms worn at the front desk during check-in.

73.    Parent Hotel Defendants provide their hotel branded locations brand name recognition, a marketing campaign, and hotel listings in the Global Distribution System and other online agency databases. They also provide access to their brand-wide central reservation systems, 800 numbers, revenue management tools, brand loyalty programs, and company websites. Therefore, bookings and room reservations are primarily controlled by Parent Hotel Defendants.[13]

74.    Parent Hotel Defendants subject Hotel Defendants to detailed standards and requirements regarding the operation of the Hotel Defendant locations named herein through the franchising agreements, detailed written policies and manuals and through other formal and informal protocols, directives, mandates, reporting, and expectations

---

[13] Ellen Meyer, *The Origins and Growth of Franchising in the Hotel Industry*, LODGING MAGAZINE (Apr. 10, 2018), The Origins and Growth of Franchising in the Hotel Industry (lodgingmagazine.com).

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

imposed by the Parent Hotel Defendants.

75.    Upon information and belief, Parent Hotel Defendants require their branded Hotel Defendants' properties to use a property management system. This system is linked to the Parent Hotel Defendants' corporate network and data center. This is to, among other things, receive reservations, and process payment transactions.

76.    Upon information and belief, per the relevant franchise agreements, Parent Hotel Defendants may enforce their brand standards through periodic inspections of the hotel locations, backed up with fines, penalties, and the ultimate threat of termination of the agreement.[14]

**Hotel Defendants and Staff Acted as Actual Agents of Parent Hotel Defendants**

77.    Parent Hotel Defendants are vicariously liable for the acts, omissions, and knowledge of their Motel 6 locations and staff of the locations named herein, which are Parent Hotel Defendants' actual agents or subagents.

78.    Parent Hotel Defendants subjected the Motel 6 locations named herein and the owners to detailed standards and requirements regarding the operation of the Motel 6 locations named herein through the franchising agreements, through detailed written policies and manuals, and through other formal and informal protocols, directives, mandates, reporting, and expectations imposed by the Parent Hotel Defendants.

79.    Parent Hotel Defendants obscure the full extent of control they exercise over their franchisees by treating the manuals and certain policies as confidential and proprietary

---

[14] Many of the franchise disclosure documents, which outline the policies and procedures of franchise agreements can be accessed publicly on https://fddexchange.com/view-fdd-docs.

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

and prohibiting any public disclosure of those policies and manuals. Upon information and belief, the standards that Parent Hotel Defendants imposed on the Hotel Defendants:

    a. Did not merely identify quality or outcome standards but instead specifically controlled the means, methods, and tools Hotel Defendants used at their Motel 6 locations;

    b. Covered virtually all aspects of hotel operations, including internal operating functions;

    c. Dictated the specific manner in which Hotel Defendants and hotel staff must carry out most day-to-day functions at their Motel 6 locations; and

    d. Significantly exceeded what was necessary for Parent Hotel Defendants to protect its registered trademarks.

80.    In addition to the ways described above, upon information and belief, Parent Hotel Defendants exercised and reserved the right to exercise systemic and pervasive control over Hotel Defendants' day-to-day operation of the subject Motel 6 locations named herein, including the following ways:

    a. Parent Hotel Defendants required franchisees/Hotel Defendants and management of franchised hotels to participate in mandatory training programs, both during onboarding and on an ongoing basis. This training covered all aspects of hotel operations, including aspects of hotel operations that go significantly beyond what would be necessary for Parent Hotel Defendants to protect their registered trademarks;

    b. Parent Hotel Defendants provided training for hotel management and

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

selected hotel staff on-site at the Motel 6 locations chosen by Parent Hotel Defendants;

c. Parent Hotel Defendants required all hotel staff to participate in training it created through an online learning platform it controlled and maintained;

d. Parent Hotel Defendants controlled training provided by Hotel Defendants to hotel staff by dictating the content of that training, providing required content for that training, and dictating the training methods used;

e. Parent Hotel Defendants retained sole discretion to determine whether all training had been completed satisfactorily;

f. For certain products and services that Hotel Defendants were required to purchase to operate the Motel 6 locations named herein, Parent Hotel Defendants designated approved vendors and prohibited the locations from purchasing goods and services from anyone other than an approved vendor;

g. Parent Hotel Defendants required Hotel Defendants to sign a technology agreement governing the terms under which franchisees must procure and use technical services and software while operating the Motel 6 locations named herein. Hotel Defendants were required to install, and use certain brands, types, makes, and/or models of hardware, software, peripheral equipment, and support services to perform internal operating functions at the hotel;

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

h.  Parent Hotel Defendants set required staffing levels for the Motel 6 locations named herein;

i.  Parent Hotel Defendants established detailed job descriptions for all positions in its Motel 6 properties and drafted numerous, detailed policies that referenced these positions and dictated which positions must perform, which tasks and how they must do so;

j.  Parent Hotel Defendants set requirements for the hiring process used by franchisees and oversaw employee discipline processes and termination decisions;

k.  Parent Hotel Defendants provided benefits for employees of the Hotel Defendants;

l.  Parent Hotel Defendants required Hotel Defendants to use a customer resource management program maintained and operated by Parent Hotel Defendants;

m.  Parent Hotel Defendants controlled channels for guests to report complaints or provide feedback regarding the Motel 6 locations and directly participated in the response and/or supervised the response to customer complaints or other feedback. Parent Hotel Defendants retained the right to provide refunds or other compensation to guests and to require Hotel Defendants to pay associated costs;

n.  Parent Hotel Defendants generated reports and analysis of guest complaints and online reviews for the subject Motel 6 locations;

o.    Parent Hotel Defendants required Hotel Defendants to use a Guest Relations Application owned, operated, and maintained by Parent Hotel Defendants to manage all guest data and information. Parent Hotel Defendants could use the backend of this system to analyze data and generate reports;

p.  Parent Hotel Defendants set detailed requirements for insurance that Hotel Defendants must purchase and retain the right to purchase insurance for Hotel Defendants and to bill them directly for that insurance if Parent Hotel Defendants determine that they have not purchased adequate insurance;

q.  Parent Hotel Defendants regularly audited the books and records of Hotel Defendants;

r.  Parent Hotel Defendants conducted frequent and unscheduled inspections of Motel 6 properties, including the Motel 6 locations named herein;

s.  Parent Hotel Defendants retained the right to issue fines, require additional training, to impose and supervise implementation of detailed corrective action plans, and to take other steps up to and including termination of any agreements if the Hotel Defendants violated any of the Parent Hotel Defendants' detailed rules, expectations, protocols, or policies, including those that governed day-to-day operations of the Motel 6 locations named herein;

t.  Parent Hotel Defendants controlled all marketing for the subject Motel 6

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

locations and prohibited them from maintaining any online presence unless specifically reviewed and approved by the Parent Hotel Defendants;

u. Parent Hotel Defendants imposed detailed recordkeeping and reporting requirements on Hotel Defendants regarding virtually all aspects of hotel operations;

v. Parent Hotel Defendants supervised and controlled day-to-day operations of the Motel 6 locations named herein through detailed information and extensive reports that it obtained through the property management system and other software systems it required Hotel Defendants to use; and

w. Parent Hotel Defendants retained the virtually unlimited right to revise policies or adopt new requirements for the day-to-day aspects of hotel operations at the subject hotel locations.

## Parent Hotel Defendants Knowingly Benefited from Participation in a Venture with Their Franchisee Hotel Defendants

81.    Hotel brands own properties and lend their name and likeness to third party owners, while the building and operations are under the brands' supervision and control. This is done through brand standards, franchise agreements, and maintaining control over all aspects of operations. This allows the parent brand to exchange the high risk that is inherent in owning an asset like a hotel for the low risk associated with owning a local property or franchise contract and still profit. Because of this, the parent brands and hotel

locations—here Parent Hotel Defendants and Hotel Defendants—are inextricably intertwined.

82.    The average customer does not see this relationship. The parent brand gives the franchisee property its identity. The parent brand provides the signage that assures customers that if they check into that hotel they can expect the standards consistent with the parent brand. The parent companies – Parent Hotel Defendants—hold themselves out to the public as the owners of the property. These brand requirements are contractual with the power to control weighed heavily toward the corporate parent brand.

83.    At all times of trafficking alleged herein and currently, booking and room reservations are controlled by the corporate parent brand.[15]

84.    Upon information and belief, at all times of trafficking alleged herein and currently, the franchised hotels typically pay a percentage of their total revenue back to the parent company and is required to develop and maintain the property in accordance with the parent brand's standards as they are laid out in the franchise agreement.

85.    Upon information and belief, per the franchise agreements, the Parent Hotel Defendants may enforce standards through periodic inspections and even termination of the franchise agreement if the franchise hotel is found to be inadequate. The right of the Parent Hotel Defendants to enforce their brand standards, including safety standards, is not just their right but their responsibility.

86.    At all times of trafficking alleged herein, Parent Hotel Defendants dictated

---

[15] Meyer, Ellen, April 10, 2018. *The Origins and Growth of Franchising in the Hotel Industry*. Lodging Magazine.

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

franchisee policies related to safety, security, human trafficking, employee training and franchisee's response to all of this.

87.     Upon information and belief, at all times of trafficking alleged herein, reservation information for rooms at the subject motels passed through a system operated and managed by the parent company—Parent Hotel Defendants.

88.     Defendants profited from the sex trafficking of Plaintiff when they rented rooms to Plaintiff and/or her trafficker when they knew or should have known that human trafficking was occurring.

89.     Defendants benefited from the steady stream of income that Plaintiff's trafficker brought to their hotels and hotel brands. Defendants profited from each and every room that Plaintiff or Plaintiff's trafficker rented where Plaintiff was harbored and maintained for the purpose of sex trafficking.

90.     Defendants facilitated the trafficking through its practices, policies, and procedures. They failed to take appropriate action to prevent the trafficking of individuals, including Plaintiff, for sex so they could continue to profit from the room rentals, and business that trafficking brings.

91.     Parent Hotel Defendants and Hotel Defendants owned and operated the subject properties while buyers paraded in and out of rooms rented for the purpose of trafficking Plaintiff. Their employees and agents observed and should have observed the buyers parading in and out of its hotel rooms to engage in the sex trafficking of Plaintiff. Their employees and agents observed or should have observed the trafficking occurring regularly and for multiple days at a time at the subject hotel locations but ignored it so they could

profit.

92.    Plaintiff's trafficking at the subject hotel locations was a result of Parent Hotel Defendant's and Hotel Defendant's participation in a venture with each other and criminal traffickers. If Parent Hotel Defendants and Hotel Defendants had not continued participating in a venture that they knew or should have known violated 18 U.S.C. §1591(a), they would not have received a benefit from Plaintiff's trafficking at the subject hotel locations.

93.    Despite their actual or constructive knowledge that the venture they were engaged in was in violation of 18 U.S.C. §§1591(a), and 1595(a) through the conduct of hotel staff and the widespread trafficking at the subject hotel locations named herein, Parent Hotel Defendants participated in the venture by continuing to associate with the hotel staff and with other Hotel Defendants to operate the hotel locations named herein in a way that it knew or should have known would lead to further violations of 18 U.S.C. § 1591(a) including trafficking of victims like Plaintiff.

94.    Parent Hotel Defendants and Hotel Defendants financially benefitted from renting hotel rooms to Plaintiff and Plaintiff's trafficker on numerous occasions.

95.    Parent Hotel Defendants participated in this venture through the conduct described herein as they were jointly responsible for relevant aspects of hotel operations.

**Hotel Defendants Facilitated Trafficking of Plaintiff**

96.    Hotel Defendants had both actual and constructive knowledge of the trafficking of Plaintiff at the hotel locations they owned and operated because the trafficking was the direct result of Hotel Defendants facilitating her trafficking at the subject locations.

97.    Hotel Defendants are responsible for the acts, omissions, and knowledge of all employees of the subject hotel locations when operating the hotel because these acts and omissions were committed in the course and scope of employment. Hotel Defendants ratified these acts and omissions because Hotel Defendants failed to exercise reasonable care in the hiring, training, and supervision of these employees given the specific risks known and reported to Hotel Defendants of sex trafficking occurring that the subject hotel locations.

98.    Despite having actual and/or constructive knowledge of widespread and ongoing sex trafficking at the subject locations, Hotel Defendants continued renting rooms to traffickers, including the rooms used to sexually exploit Plaintiff and other victims.

99.    Hotel Defendants knew or were willfully blind to the fact that Plaintiff was being trafficked and, despite this, benefited from continued association with her trafficker by providing them with a venue in the form of hotel rooms and related services, to harbor and facilitate Plaintiff's sexual exploitation.

100.    Hotel Defendants also facilitated widespread trafficking at their hotel locations, including the trafficking of Plaintiff in ways including:

      a.    Allowing inappropriate and inadequate practices for hiring, training, supervising, managing and disciplining front line staff regarding issues related to human trafficking;

      b.    Inadequate and inadequately enforced sex trafficking notice and training for hotel staff;

      c.    Choosing not to report known or suspected criminal activity including sex

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

trafficking according to reasonable practices, industry standards, laws, and/or applicable franchisor policies and procedures; and

d. Implicitly encouraging the activities of traffickers by creating an environment where they did not need to incur the burden of taking significant steps to conceal their activities but, instead, could operate without concern for detection or interference by the hotel staff.

## **Parent Hotel Defendants Facilitated the Trafficking of Plaintiff at the Hotel Defendant Locations**

101.   Upon information and belief, during the times Plaintiff was trafficked at the subject properties, Parent Hotel Defendants participated directly in aspects of the operation of the subject hotels that influenced whether and to what extent trafficking offered at the hotels, including but not limited to the trafficking of Plaintiff as follows:

a. Parent Hotel Defendants assumed responsibility and control over the human trafficking response of their subject motel properties, including design and implementation of practices to prevent trafficking, safety, and security procedures, employee, and franchisee education, training and response, partnership with external organizations, and advocacy;

b. Parent Hotel Defendants retained control over when its branded hotels would share information with law enforcement and when law enforcement would be contacted about suspected criminal activity in their branded hotel locations;

c. Parent Hotel Defendants retained control over determining which hotels

27

needed additional training or other resources on the risk of trafficking occurring and other related criminal activity;

d. Parent Hotel Defendants retained control to terminate hotel staff and/or a franchising agreement based on the response to human trafficking;

e. Parent Hotel Defendants determined whether the training is provided, when it is provided, the content of the training, how the training is delivered, who receives it, and the consequences of someone not participating or failing to follow such training; and

f. Parent Hotel Defendants retained control over setting, supervision, overseeing, and enforcement policies and procedures for housekeeping services at the subject motel locations, including how often rooms must be entered, how to respond to guest refusals of entry into rooms, and steps to monitor guest safety issues through housekeeping services.

102.   As a direct and proximate result of these egregious practices on the part of the Parent Hotel Defendants, Plaintiff and victims of sex trafficking and exploitation have been permanently injured and damaged physically, emotionally, psychologically, and financially.

## **Defendants' Knowledge of Sex Trafficking at Their Locations**

103.   Defendants' knowledge is not limited to a general awareness of the problem of sex trafficking in the hotel industry. Defendants have known, since well before the named Plaintiff was trafficked, that sex trafficking was ongoing and widespread at their branded properties, including the subject properties named herein.

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

104. Use of the Parent Hotel Defendants' branded properties for sex trafficking is well known to all Defendants. Upon information and belief, before and at the time Plaintiff was trafficked at the subject Hotel Defendant location properties, each of the Hotel Defendants monitored criminal activity occurring at the branded hotels and were aware of activity indicating commercial sex, sex trafficking, and related crimes occurring at those branded hotels, including the specific hotel properties where Plaintiff was trafficked.

105. Defendants knew staff at its branded properties were facilitating sex trafficking and that it was generating revenue through policies that encouraged sex traffickers to operate at their brand properties, including but not limited to not implementing policies and procedures known to be necessary to stop known trafficking; not always requiring identification cards or "IDs"; allowing daily payments of cash for extended stays; complying with requests for rooms to be rented away from other guests; allowing traffickers to escort bruised and battered women to rooms without IDs; allowing several buyers to come in and out of the rooms victims were trafficked in without ID; ignoring yelling and screaming from rooms where trafficking took place; ignoring obvious copious amounts of sex paraphernalia; not addressing the trafficking signs and reports of drugs, abuse and prostitution; forming relationships with traffickers and treating traffickers like "regulars" with benefits by accommodating specific requests that entail known signs of trafficking and not reporting the trafficking or taking any steps to prevent or stop it.

106. Defendants have access to reviews left by guests on websites wherein guests frequently complain about the prevalence of obvious trafficking, hearing physical violence by traffickers, and other signs of trafficking and other crimes often associated with

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

trafficking.

107.    Information that has become public through news stories establishes the entrenched and pervasive nature of Defendants' role in providing a venue where sex trafficking has continued unabated for years. Defendants have provided the means necessary for traffickers to traffic victims, including Plaintiff.

108.    During the period Plaintiff was trafficked at the subject locations named herein, there were obvious signs that her trafficker was engaged in sex trafficking.

109.    Other girls were trafficked at the same hotels at the same time as Plaintiff.

110.    Plaintiff's trafficker would wait for Plaintiff in the parking lot while Plaintiff checked in. Plaintiff's trafficker would linger around the hotel or in the parking lot while Plaintiff was forced to have sex with customers at the subject hotels. This was all in plain sight of Defendants' employees at the subject locations. Plaintiff's trafficker could be seen leaving the room when another male arrived and then returning as soon as that male left. This would happen multiple times a day, nearly every day, for years.

111.    Plaintiff's trafficker would often meet sex buyers in the parking lot, collect their money and then either wait outside in the parking lot until the sex buyer was finished and left the hotel. This transaction would take place in public view, outside in parking lot. This would happen multiple times a day, nearly every day, for years.

112.    There was heavy foot traffic in and out of the rooms where Plaintiff was being harbored. This foot traffic involved men who were not hotel guests. Several men came in and out of the subject hotel rooms in a single day. These individuals entered and left at unusual hours and were present at the hotel for brief periods of time. Their comings and

goings were visible to hotel employees that were located at front desks and around the property. A reasonable hotel would have seen these regular "red flag" interactions at their property in plain sight and Defendants should have seen it by and through their employees and agents.

113. There were obvious signs consistent with trafficking, and which included well known "red flags" for trafficking in a hotel, such as condoms, sex paraphernalia, and lingerie. These things would have been seen by hotel employees collecting the trash or cleaning the room after Plaintiff and her trafficker left.

114. When forced and coerced into coming and going from the subject motel locations, Plaintiff looked unhealthy, unhappy, abused, and scared. Her trafficker and/or associates were always watching her, and her noticeable demeanor was visible to hotel employees they passed by. Additionally, her trafficker always looked paranoid.

115. Hotel staff and employees saw Plaintiff with other women being trafficked at the same time.

116. Upon information and belief, multiple employees at the subject hotel locations named herein, including management-level employees, observed, or were made aware of these obvious signs of trafficking while acting within the scope and course of their employment.

117. As such, Defendants knew or were willfully blind to the fact that Plaintiff was being trafficked at the subject motel locations named herein.

118. A brief examination of just a handful of examples for each Defendant suffices to show the extraordinary frequency with which Defendants have long received and continue

to receive evidence and reports that human trafficking is a known issue at their hotel locations.

**1.     Parent Hotel Defendants and Hotel Defendants' Knowledge of Sex Trafficking at Their Locations**

119.    A Los Angeles Motel 6 became such a hub for human trafficking and other criminal activity that Parent Hotel Defendants paid to settle a public nuisance lawsuit related to such trafficking filed by the City of Los Angeles.[16]

120.    The Los Angeles nuisance settlement required Parent Hotel Defendants to change policies that were facilitating sex trafficking.[17] Parent Hotel Defendants knew from that lawsuit, from many prior lawsuits, and from their personal knowledge about sex trafficking at their properties that their policies were facilitating sex trafficking. Based on information and belief, at all times relevant in this Complaint and currently, Parent Hotel Defendants have failed to adequately implement and enforce such changes.

121.    Public statements of Parent Hotel Defendants confirm that they knew before and during the sex trafficking of Plaintiff that sex trafficking is a problem in the hotel industry, sex trafficking was occurring at their branded hotels, and that they retained control over the response of their branded hotels to this problem. Parent Hotel Defendants recognized that "[t]raffickers often use hotels and motels for sex trafficking activities due to the privacy extended to guests."[18] They also acknowledged the significant role Parent Hotel

---

[16] Motel 6 pays $250,000 to settle human trafficking suit (Aug. 31, 2017), https://www.cbsnews.com/news/motel-6-pays-250000-to-settle-human-trafficking-suit/.
[17] *Id.*
[18] G6 HOSPITALITY ANTI-HUMAN TRAFFICKING TRAINING, http://g6propertycollateral.com/wp-content/uploads/2020/02/G6_TheRoomNextDoor_Training_V12b_NoFacilitator.pdf

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

Defendants have in the three D's: deterring, detecting, and disrupting sex trafficking in their branded hotels.[19]

122.    Parent Hotel Defendants acknowledge on its website that it controls the policies, procedures, training, and codes of conduct that have facilitated sex trafficking at its Motel 6 Brand hotels, including the subject Hotel Defendants' properties where Plaintiff was trafficked and abused.[20]

123.    Parent Hotel Defendants acknowledge on its website that it controls the policies, procedures, training, and codes of conduct that have facilitated sex trafficking at its branded hotels.[21]

124.    Among some of the notable press involving frequent use of G6 hotels for illegal trafficking activity, the following was noted:

    a. In late 2003, a trafficker set up a sex trafficking venture at a Motel 6 in Connecticut in which two (2) young women were sold for sex eight (8) to ten (10) times per day.[22]

    b. In April 2009, a sex trafficking venture operated out of a Motel 6 in Toledo, Ohio.[23]

    c. In approximately September 2011, sex traffickers set up an operation at a Motel 6 in Toledo, Ohio to sell fifteen (15) and sixteen (16) year old girls

---

[19] *Id.*

[20] https://g6hospitality.com/combating-human-trafficking/

[21] *Id.*

[22] Amy Fine Collins, Sex Trafficking of Americans: The Girls Next Door, Vanity Fair (May 2011), https://www.vanityfair.com/news/2011/05/human-trafficking-201105

[23] Five Toledoans Indicted On Sex Trafficking Charges, ABC7Chicago.com (Nov. 7, 2010), https://abc7chicago.com/archive/7771888/.

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

for sex.[24]

    d.   From approximately 2012 through October 2014, two (2) men engaged in a criminal sex trafficking venture of children which operated in part out of a Motel 6 in Harvey, Illinois.[25]

    e.   Police rescued an eighteen (18) year old girl from a sex trafficker in February 2012, at a Motel 6 in Portland, Oregon.[26]

    f.   The FBI investigated and arrested several individuals in December 2012, for the victimization and human trafficking of several young women and a juvenile at a Motel 6 in Madison, Alabama.[27]

    g.   The Orange County Human Trafficking Task Force busted a criminal enterprise in December 2012 that was selling women for sex out of a Motel 6 in Anaheim, California.[28]

    h.   Two men were arrested in March 2015 for sex trafficking a fifteen (15) year old girl at Motel 6 in Austin, Texas.[29]

    i.   In March 2015, police arrested a man for sex trafficking a runaway

---

[24] Mark Reiter, *Two Toledoans Accused Of Juvenile Sex Trafficking*, The Blade (Jun. 1, 2010), https://www.toledoblade.com/Courts/2012/06/02/2-Toledoans-accused-of-juvenile-sex-trafficking-1.html

[25] Press Release, U.S. Dept. of Justice, *Two Aspiring Rappers Charged With Operating Sex-Trafficking Ring In Chicago And Suburbs* (Jan. 15, 2016), https://www.justice.gov/usaondil/file/813771/download.

[26] Press Release, U.S. Dept. of Justice, *Tacoma Pimp Sentenced To 25 Years For Sex-Trafficking Two Victims* (Nov. 20, 2013), https://www.justice.gov/usao-or/pr/tacoma-pimp-sentenced-25-years-sex-trafficking-two-victims.

[27] *FBI Investigates Human Trafficking At Madison Hotel*, WHNT News 19 (Dec. 7, 2012), https://whnt.com/2012/12/07/fbi-investigates-human-trafficking-at-madison-motel/.

[28] *Suspects Busted in Anaheim Sex Ring*, ABC13 Eyewitness News (Dec. 5, 2012), https://abc13.com/archive/8909784.

[29] Lindsay Bramson, *Local Teen Saved from Sex Slavery; Two Charged*, KXAN Austin (Mar. 6, 2015), https://www.kxan.com/news/local/austin/local-teen-freed-from-sex-slavery-two-charged/1049580764.

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

seventeen (17) year old at a Motel 6 in Warwick, Rhode Island.[30]

j.  Over a fourteen (14) month period ending in approximately April 2015, at the same Motel 6 in Warwick, Rhode Island had seventy-five (75) arrests on its property for crimes including sex-trafficking.[31]

k.  Seven (7) people were indicted in January 2016, by a Colorado grand jury for sex trafficking children from 2014 through the summer of 2015, out of hotels in Denver, Colorado, including a Denver area Motel 6.[32]

l.  In the summer of 2015, a woman was arrested at a Motel 6 in Great Falls, Montana where she was involved in sex trafficking a seventeen (17) year old girl.[33]

m.  A married couple was indicted in June 2015, for their roles in sex trafficking minor children ages seventeen (17), sixteen (16), and fifteen (15) years old out of a Motel 6 in Everett, Washington.[34]

n.  In Tuscaloosa, Alabama police rescued a fourteen (14) year old girl from a Motel 6 in June 2015, and a grand jury subsequently charged her assailant

---

[30] Amanda Milkovits, Massachusetts Man Accused of Trafficking Teen In Warwick Motel, NewportRI.com (Mar. 24, 2015), https://www.newportri.com/article/20150324/NEWS/150329666.

[31] Sarah Kaplan, Crime-Ridden Motel 6 In R.I. Will Hand Over Guest List To Police, The Washington Post (Apr. 28, 2015)https://www.washingtonpost.com/news/morning-mix/wp/2015/04/28/crime-ridden-motel-6-in-r-i-will-hand-over-guest-list-to-police/?utm_term=.a804ce3f32a8.

[32] Hsing Tseng, Seven Indicted by Colorado Grand Jury In Child Sex Trafficking Ring Bust, Fox 31 Denver (Jan. 6, 2016), https://kdvr.com/2016/01/06/7-indicted-by-colorado-grand-jury-in-child-sex-trafficking-ring-bust/.

[33] Andrea Fisher, Woman Caught Up In Human Trafficking Ring Pleads Guilty (Aug. 29, 2016), https://www.greatfallstribune.com/story/news/local/2016/08/29/woman-caught-human-trafficking-ring-pleads-guilty/89566374/.

[34] Diana Hefley, County Investigating 45 Ongoing Human Sex Trafficking Cases, Herald Net (Jun. 26, 2015), https://www.heraldnet.com/news/county-investigating-45-ongoing-human-sex-trafficking-cases/.

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

with human trafficking and rape.[35]

o.  In approximately July 2015, sex traffickers sold a fifteen (15) year old girl for sex at a Motel 6 in Pismo Beach, California.[36]

p.  In approximately March 2013, sex traffickers began operating a sex trafficking venture out of Motel 6 locations in Bangor and Portland, Maine.[37]

q.  Beginning in approximately May 2013, a fifteen (15) year old runaway was trafficked for sex out of the Motel 6 on Caton Avenue in Baltimore, Maryland.[38]

r.  In Richmond County, Georgia a man was arrested at a local Motel 6 in October 2013 and charged with sex trafficking of two young women.[39]

125.  This sampling of news stories and other public information establishes that, at the time Plaintiff was trafficked at the subject properties, Parent Hotel Defendants and Hotel Defendants knew or should have known that:

a.  There was widespread and ongoing sex trafficking occurring at the G6 branded properties;

---

[35] Tuscaloosa Man Charged With Rape And Trafficking Mississippi Teen, News Mississippi (Nov. 7, 28 2014), https://newsms.fm/tuscaloosa-man-charged-human-trafficking-mississippi-teen/.

[36] Matt Fountain, Four Accused Of Pimping Out 15-Year-Old Girl In SLO Will Stand Trial, SanLuisObispo.com (May 5, 2016), https://www.sanluisobispo.com/news/local/article75832962.html.

[37] Danielle McLean, What Drives Maine Sex Traffickers' Inhumanity, Bangor Daily News Maine Focus (Sept. 12, 2016), https://bangordailynews.com/2016/09/12/mainefocus/what-drives-maine-sex-traffickers-inhumanity/.

[38] Anne Kramer, Man Faces Prison Time For Sex Trafficking Baltimore Teen, WBAL News Radio (Apr. 10, 2014), https://www.wbal.com/article/106578/2/man-faces-prison-time-for-sex-trafficking-baltimore-teen.

[39] UPDATE: Man Arrested For Sex Trafficking, WRDW.com On Your Side, (Oct. 3, 2013), https://www.wrdw.com/home/headlines/Man-arrested-for-sex-trafficking-226301261.html.

COMPLAINT FOR DAMAGES AND INJURIES

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

b.  Sex trafficking was a brand-wide problem for Parent Hotel Defendants;

c.  G6 franchisees and hotel staff were not taking reasonable steps to identify, report, and respond to known or probable sex trafficking occurring at their hotel properties and were facilitating sex trafficking and harboring trafficking at the branded hotel properties; and

d.  G6 and its franchisees were earning revenue by providing venues where widespread and ongoing sex trafficking was occurring.

126.    Parent Hotel Defendants and Hotel Defendants were specifically aware that sex trafficking was widespread and ongoing at the subject Motel 6 locations.

127.    Parent Hotel Defendants and Hotel Defendants knew Plaintiff was being trafficked at the locations named herein by the many red flags present during their continued stays. Plaintiff paid for stays in cash,  paid for extended stays on a day-to-day basis, requested rooms away from other guest and/or the front desk, obvious signs of illegal drug use, obvious visible signs of physical abuse, do not disturb signs always up, frequent requests for new linens and towels but not letting cleaning staff into the rooms, men waiting out of the room while other men were inside with Plaintiff for short periods of time.

128.    The calls for service for law enforcement at each one of the Motel 6 locations named herein show just how much criminal activity was taking place at these specific locations. These calls for service include but are not limited to multiple calls for suspicious circumstances, prostitution, suspicious vehicles, domestic violence, battery, sexual assault, threats, disturbances, and welfare checks. These calls for service would have put Hotel Defendants as well as Parent Hotel Defendants on notice of the crimes occurring at their

properties. The calls for service for law enforcement and each of the two subject hotels were happening on almost a daily basis, and sometimes multiple times a day.

129.   In addition to the other red flags alleged throughout this complaint, the Motel 6 North located at 3145 Cleveland Ave, Santa Rosa, California had many other red flags that would have put G6 Hospitality Property, LLC as well as the other G6 entities on notice that Plaintiff was being trafficked at this location.

a. Motel 6 North had a security company that worked at this location. This security guard would have seen all the red flags of trafficking and would have seen what Plaintiff was forced to endure.

b. There was a hole in the fence where the sex buyers would come through to get to Plaintiff's room. They would come through the fence and pay Plaintiff's trafficker who was in the parking lot. Plaintiff's trafficker would give the sex buyer a key and the sex buyer would go to Plaintiff's room. After some time, the buyer would leave the room and go back through the hole in the fence. This happened multiple times a day and night. This would have been and should have been observable by hotel staff and security.

c. Plaintiff's trafficker would have Plaintiff book the room around the back and to the left because the hole in the fence gave sex buyers easy access to the hotel. Motel 6 North staff accommodated this request.

d. One of the victims that Plaintiff was trafficked with at this location had already been kicked out of this location but was able to come back with

Plaintiff.

e.  Former front desk employees have stated that they recognized when girls would come in to book rooms and look nervous, rushed or paranoid.

f.  Prior employees at this Motel 6 North location have stated that they recognized the signs of trafficking but were afraid they would get in trouble if they said anything.

g.  If Plaintiff was unable to pay for the room, front desk staff would let it slide for that day because they knew she could pay later.

h.  Front desk staff, managers, cleaning staff, and security saw Plaintiff again and again. She appeared malnourished, on drugs, and being controlled. She looked desperate and in distress.

i.  There were a few times that hotel staff told Plaintiff's trafficker to stop loitering in and leave parking lot where he would wait while she took the dates. However, they were allowed to come back again and again.

j.  Plaintiff and her trafficker would stay at this location for some time, leave for a few days, and then come back.

k.  Housekeeping was never allowed to clean Plaintiff and her trafficker's rooms while they stayed there. Either Plaintiff or her trafficker would ask the hotel staff for more towels and sheets. Housekeeping would even let Plaintiff borrow the vacuum.

l.  Though one former employee told her manager about the trafficking occurring at this location, she was told that nothing would be done unless

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

they were caught in the act. The manager did nothing else with this report.

130.   In addition to the other red flags alleged throughout this complaint, the Motel 6 South located at 2760 Cleveland Ave, Santa Rosa, California had many other red flags that would have put G6 Hospitality Property, LLC; Motel 6 Operating, LP; as well as the other G6 entities on notice that Plaintiff was being trafficked at this location.

    a.  When Plaintiff would check into the hotel she would request certain rooms in the back of the hotel. Hotel staff would accommodate this request.

    b.  When Plaintiff couldn't pay for the room she was allowed to stay and then pay the next day. She was always allowed to pay in cash.

    c.  Front desk staff, managers, cleaning staff, and security saw Plaintiff again and again. She appeared malnourished, on drugs, and being controlled. She looked desperate and in distress.

    d.  Plaintiff's trafficker would make her check into this hotel while he waited in the parking lot. He would drop her off and then meet her in the back near the room she was told to request.

    e.  Plaintiff's trafficker waited in the parking lot for sex buyers to arrive. The sex buyer would pay Plaintiff's trafficker in the parking lot, would be given a key, and then go up to the room Plaintiff was being kept in. When the sex buyer was done he would leave the room and Plaintiff's trafficker would come up to the room. This went on several times a day and night for years.

    f.  The sex buyers would park in the parking lot in plain view of hotel staff.

40

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

g.  Housekeeping was never allowed to clean their rooms while they stayed there. Either Plaintiff or her trafficker would ask the hotel staff for more towels and sheets.

## Defendants are Jointly Responsible for the Trafficking of Plaintiff

131.    Parent Hotel Defendants and their subject Hotel Defendants were participants in a joint venture with each other, which involved a common enterprise, profit-sharing, a community of interests, and joint rights of control and management, and are vicariously liable for the violations of the other participants in the joint venture.

132.    Upon information and belief, the operation of the subject Motel 6 locations was part of a single unified operation by Parent Hotel Defendants.

133.    Upon information and belief, the subject Motel 6 locations shared common parent companies, were subject to joint control, and operated as an integrated enterprise and/or as alter-egos.

134.    Upon information and belief, Parent Hotel Defendants acted jointly to own, operate, control, manage, and supervise the subject Motel 6 locations. As an integrated enterprise and/or joint venture, Parent Hotel Defendants and Hotel Defendants were separately and jointly responsible for compliance with all applicable laws.

## Defendants are Jointly and Severally Liable for Plaintiff's Damages

135.    The venture or ventures in which each Defendant participated were direct, producing, and proximate causes of the injuries and damages to Plaintiff.

136.    Under the TVPRA, Defendants are jointly and severally liable for all damages that a jury awards to Plaintiff for past and future losses they suffered as a proximate result of

their sexual exploitation and trafficking.

## CAUSES OF ACTION AGAINST DEFENDANTS

### Sex Trafficking under 18 U.S.C. § 1595

**1.    Cause of Action: Perpetrator liability under 18 U.S.C §1595(a) based on violation of 18 U.S.C §1591(a)**

137.    Plaintiff realleges and incorporate the allegations in paragraphs 1 through 135.

138.    Plaintiff is a victim of sex trafficking within the meaning of §1591 and 1595(a) and is thus entitled to bring a civil action under 18 U.S.C §1595(a) against the "perpetrator" of any violation of the TVPRA.

139.    Defendants are perpetrators within the meaning of 18 U.S.C §1595(a) because they:

    a.  Violated 18 U.S.C §1591(a)(1) when, through the acts and omissions described throughout this Complaint, they harbored individuals, including Plaintiff, knowing or in reckless disregard of the fact that the victims would be caused, through force, coercion, or fraud, to engage in commercial sex acts while at its respective hotel property; and

    b.  Violated 18 U.S.C §1591(a)(2) when, through the acts and omissions described throughout this Complaint, it knowingly received financial benefit by knowingly assisting, supporting, or facilitating a venture that was engaged in violations under 18 U.S.C §1591(a)(1) at its respective hotel properties.

140.    Violations of 18 U.S.C §1595(a) by each of the Defendants as "perpetrators" operated, jointly, with other unlawful acts and omissions alleged in this Complaint, to

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

cause Plaintiff to suffer substantial physical and psychological injuries and other damages as a direct and proximate result of being trafficked and sexually exploited at the Defendants' hotel properties.

**2.    Beneficiary Liability under §1595 (a) of the TVPRA (all Defendants).**

141.    Plaintiff realleges and incorporate the allegations in Paragraphs 1 through 140.

142.    Plaintiff is a victim of sex trafficking within the meaning of 18 U.S.C §§ 1591 and 1595(a) and is thus entitled to bring a civil action under the "beneficiary" theory in 18 U.S.C §1595(a) against anyone who knowingly benefited from participation in a venture that the person knew or should have, with reasonable diligence, known was engaged in a violation of the TVPRA.

143.    Through acts and omissions described throughout this Complaint, Defendants received a financial benefit from participating in a venture with each other and traffickers, including Plaintiff's trafficker, despite the fact that each defendant knew or should have known that this trafficker was engaged in violations of 18 U.S.C §1591(a)(1) and 18 U.S.C §1591(a)(2) at Defendants' properties, including the subject locations alleged in this Complaint. As more specifically alleged above, Parent Hotel Defendants and Hotel Defendants took part in a common undertaking and enterprise involving risk and potential profits, and here, actual profits resulted. Parent Hotel Defendants' and Hotel Defendants' employees had a direct association with the trafficker and knowingly facilitated the trafficker, which, as shown more thoroughly in the incorporated allegations above, showed a continuous business relationship between the trafficker and Defendants such that the pattern of conduct appears to be a tacit agreement between them. Thus, Defendants are

liable as a beneficiary under 18 U.S.C §1595(a).

144.    Through the acts and omissions described throughout this Complaint, Defendants received a financial benefit from participating in a venture with each other in the operations of its respective hotel properties even though Defendants knew or should have known that this venture was violating 18 U.S.C §§ 1591(a) and 1595(a).

145.    Violations of 18 U.S.C §1595(a) by Defendants as "beneficiaries" operated, jointly, with other unlawful acts and omissions alleged in this Complaint, to cause Plaintiff to suffer substantial physical and psychological injuries and other damages because of being trafficked and sexually exploited at the Defendants' hotel properties.

**3.    Cause of Action: Vicarious Liability for TVPRA Violations (Parent Hotel Defendants).**

146.    Plaintiff realleges and incorporates the allegations in Paragraphs 1 through 135 and 145.

147.    Under the TVPRA and the federal common law, each member of a joint venture is vicariously liable for the acts and omissions of all other members of that joint venture.

148.    Under the TVPRA and the federal common law, an entity is vicariously liable for the acts and omissions of its alter-egos.

149.    Hotel Defendants acted as the actual agents of Parent Hotel Defendants when operating its respective hotel properties and in committing the wrongful acts and inactions alleged herein.

150.    Through the wrongful acts and omissions described throughout this Complaint, Parent Hotel Defendants exercised or retained the right to exercise systematic and day-to-

day control over the means and methods used by its franchisee to operate its respective hotel property.

151.    Parent Hotel Defendants are vicariously liable for the TVPRA violations of its franchisees, the Hotel Defendants, and the subagents of such.

152.    Additionally, on information and belief, each of the Parent Hotel Defendants participated in a joint venture operating the subject Hotel Defendant locations. They had highly integrated operations at the hotels, shared revenue and profits generated from the hotels, and exercised mutual control over the venture at the hotels. They functioned as a single integrated entity and/or as alter-egos of one another and are therefore each directly and proximately liable for the harms and damages caused to Plaintiff as a result.

## JOINT AND SEVERAL LIABILITY

153.    "Joint and several liability 'applies when there has been a judgment against multiple defendants."[40] If two or more Defendants jointly cause harm, each defendant is held liable for the entire amount of the harm; provided, however, that the plaintiff recovers only once for the full amount.[41]

154.    Federal law allows an injured party to sue a tortfeasor for the full amount of damages for an indivisible injury that the tortfeasor's negligence was a substantial factor in causing, without regard to his proportion of fault and even if the concurrent negligence

---

[40] *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 220–21 (1994).
[41] See 735 ILCS 5/2-1117; see Restatement (Second) of Torts § 875 (1977); *Honeycutt v. United States*, 137 S. Ct. 1626 (2017).

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

of others contributed to the incident.[42]

155.    Plaintiff alleges Defendants' and each of them, should be held joint and severally liable to Plaintiff for the totality of her injuries and damages alleged herein.

## DISCOVERY RULE

156.    To the extent defendants assert an affirmative defense of limitations, Plaintiff invokes the discovery rule. At the time she was harmed and until at least 2018, Plaintiff was under coercion and control of her trafficker who abused and manipulated her. Thus, Plaintiff did not discover and could not have reasonably discovered the legal cause of her injuries more than ten years before she filed this lawsuit. While she was under the control of her trafficker, Plaintiff – through no fault of her own – lacked the information to bring claims because she did not know both her injuries and the cause of her injuries. This lack of information was due to no fault on the part of Plaintiff but rather was a direct result of Plaintiff being kept under the control of her trafficker, which Defendants facilitated.

157.    At the time Plaintiff was harmed, she did not know that she was the victim of human trafficking as the term is defined by law, that her injuries arose from being trafficked at Defendant's hotels, or that she was a person trafficked, much less that she was being victimized by a human trafficking venture, and she did not discover and was not in position to discover the legal cause of her injuries, more than ten years before suit was filed.

158.    To the extent Defendants assert an affirmative defense of limitations, Plaintiff invokes the Doctrine of Equitable Tolling because, as a result of being a victim of

---

[42] *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256 (1979) (citations omitted); *Manganiello v. City of New York*, No. 07 Civ. 3644, 2008 WL 2358922 (S.D.N.Y. June 10, 2008), affirmed, 612 F.3d 149 (2nd Cir. 2010).

trafficking, Plaintiff faced extraordinary circumstances, which arose through no fault of her own, that prevented her from pursing her legal remedies including but not limited to the filing of a lawsuit, and those circumstances did not end more than 10 years before Plaintiff filed this lawsuit. Plaintiff's claims are timely and do not result in prejudice to Defendants.

159.    As a result of her continuous trafficking at the subject hotels until at least 2018, Plaintiff was beaten, drugged, sexually assaulted, and mentally abused. She lacked the mental capacity to recognize the extent and scope of her injuries or those responsible particularly those who financially benefited from her trafficking but may not have been seen to be directly involved.

160.    Plaintiff was under the continuous control of her trafficker until at least 2018. As a result, she did not have the freedom to investigate her claims, to identify those responsible or to seek legal representation necessary to pursue her legal rights. This continuous trafficking resulted from Defendants continuous facilitating of trafficking at the subject hotel locations named herein and Defendants ongoing venture with one another and with criminal traffickers.

161.    To the extent that Defendants assert an affirmative defense of limitations, Plaintiff also invokes the Continuing Tort Doctrine because this lawsuit arises out of a pattern of continuous and ongoing tortious conduct.

162.    Plaintiff was subject to continuous trafficking at the subject hotel locations until at least 2018, which is not more than 10 years before Plaintiff filed this lawsuit.

163.    This continuous trafficking resulted from Defendants continuous facilitating of

trafficking at the subject hotel locations named herein and Defendants ongoing venture with one another and with criminal traffickers.

## **DAMAGES**

164.    Defendants' wrongful acts and omissions described above, individually and collectively, caused Plaintiff to sustain legal damages.

165.    Plaintiff did suffer the following injuries as a direct and proximate result of Defendants', and each of their, wrongful actions and inactions alleged herein, and as such Plaintiff is entitled to be compensated for past and future personal injuries, non-economic damages, and economic damages, see, e.g., 18 U.S.C. §§ 1593, 1595, including:

a.  actual damages;

b.  direct damages;

c.  incidental and consequential damages;

d.  lost earnings and lost earning capacity;

e.  necessary medical expenses;

f.  life care expenses;

g.  physical pain and suffering;

h.  physical impairment;

i.  mental anguish and emotional distress damages (until trial and in the future);

j.  restitution;

k.  unjust enrichment; and

l.  disgorgement of profits.

166.    Plaintiff is entitled to pre- and post-judgment interest at the maximum legal rates.

## Punitive Damages

167.    Plaintiff is entitled to punitive damages under the applicable statutes against Defendants, and each of them, for each and every cause of action alleged herein, as a result of Defendants' outrageous, wanton, willful, and malicious conduct underlying Plaintiff's claims. See *Ditullio v. Boehm*, 662 F.3d 1091 (9th Cir. 2011).

## Attorney Fees

168.    Plaintiff is entitled to recover her costs and reasonable, necessary, or customary attorneys' fees from Defendants under the applicable statutes. See 18 U.S.C. § 1595(a).

169.    All conditions precedent to Plaintiff's recovery of its costs and attorneys' fees have occurred or will occur prior to entry of judgment in this suit.

## Jury Demand

170.    Plaintiff requests a jury trial in this action.

## Prayer

171.    For these reasons, Plaintiff prays that this case be set for trial before a jury, and that upon a final hearing of the cause, judgment be entered for Plaintiff against Defendants jointly and severally, for:

        a.  all economic damages to which she is entitled;

        b.  all actual damages to which she is entitled;

        c.  all incidental and consequential damages to which she is entitled;

        d.  all mental anguish and emotional distress damages to which she is entitled;

SINGLETON SCHREIBER
591 CAMINO DE LA REINA, STE. 1025
SAN DIEGO, CA 92108
(619) 771-3473

e.  all restitution damages to which she is entitled;

f.  all disgorgement of profits to which she is entitled;

g.  all unjust enrichment damages to which she is entitled;

h.  exemplary, treble, and/or punitive damages;

i.  attorneys' fees and costs of suit;

j.  pre-judgment and post-judgment interest at the highest rate allowed by law; and

k.  all other relief to which she is entitled in law or in equity.

SINGLETON SCHREIBER

Dated: July 15, 2025

/s/ Katie Llamas
Brett Schreiber (SBN 239707)
bschreiber@singletonschreiber.com
Meagan Verschueren (SBN 313117)
mverschueren@singletonschreiber.com
Katie Llamas (SBN 303983)
kllamas@singletonschreiber.com
591 Camino de la Reina, Ste. 1025
San Diego, CA 92108
Tel. (619) 771-3473

Attorneys for Plaintiff JANE DOE